## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CIERRA COUNCIL**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CONNEXIN SOFTWARE, INC.**,<br><br>Defendant. | Case No.  23-cv-103<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Cierra Council, through her attorneys, bring this Class Action Complaint against the Defendant, Connexin Software, Inc. ("Connexin" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, alleging as follows:

### INTRODUCTION

1.      Connexin, a medical records servicer to pediatrician clinics across the country, lost control over 2.2 million patients' highly sensitive medical records in a data breach by cybercriminals ("Data Breach"), exposing them all to a lifelong risk for identity theft and fraud.

2.      Connexin's breach is uniquely harmful given the population it impacts, children and their guardians.

3.      The breach is also unique because Connexin is a company that supposedly specializes in storing highly sensitive medical records.

4.      In fact, Connexin promises it will safeguard patient PII and PHI with "no less than reasonable care"—confirming its responsibilities under the law to protect patient records.

5.      But despite promising to guard the records belonging to its patients, Connexin

1

never implemented the "reasonable" cybersecurity safeguards needed to fulfill that promise.

6.      In August 2022, Connexin discovered that thieves had bypassed its security and stolen patient records. The information compromised includes not only "personally identifiable information" ("PII") but also "protected health information" ("PHI"), altogether including: "(1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ('SSNs'), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information, physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider)."

7.      Exposing this information devastates breach victims. Not only has the breach exposed their highly sensitive medical records, they now have a lifelong risk for identity theft because the breach divulged information they cannot change, like their Social Security numbers and birth dates.

8.      And the breach is especially damaging considering the population it primarily affects, children, whose information can be misused to perpetrate fraud on themselves and others.

9.      Exacerbating that harm, Connexin delayed notifying breach victims about the exposure for three months, all while criminals were misusing its patients' PII and PHI.

10.      Indeed, after the Data Breach, but before Connexin alerted her to it, Ms. Council suffered repeated fraud and identity theft. Had Connexin notified her about the breach "without

reasonable delay" as Pennsylvania law requires, she could have prevented or mitigated that harm.

11.     In its notice, Connexin recognizes how its breach threatens patients, as it is warning them to monitor their accounts for fraud, freeze their credit accounts, sign up for credit monitoring, and report any fraud to their providers. As a result, patients are not only suffering harm from the breach, but must spend time and resources to mitigate the harm it will cause in the future.

12.     Connexin's misconduct violates state and federal and industry standard data security policies. Indeed, the Data Breach shows that Connexin's data security could not prevent, detect, or stop the Data Breach before cybercriminals could bypass Connexin's system and steal patient PHI and PII.

13.     Ms. Council is a breach victim and parent to another breach victim. She brings this Class Action on behalf of herself and all others harmed by Connexin's misconduct.

## PARTIES

14.     Plaintiff, Cierra Council, is a natural person and citizen of North Carolina, where she intends to remain. Ms. Council is a Data Breach victim, receiving Connexin's Breach Notice in December 2022.

15.     Defendant, Connexin, is a Maryland corporation, with its principal place of business in Pennsylvania at 602 W. Office Center Dr., Ste. 350, Fort Washington, Pennsylvania.

## JURISDICTION & VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from

Defendant.

17.    This Court has personal jurisdiction over Defendant because its principal place of business is located in this District and the events related to this action arose out of this District.

18.    Venue is proper because Defendant's principal place of business is located in this District.

## BACKGROUND FACTS

**A.    Connexin**

19.    Connexin, operating under the business name "Office Practicum," is an electronic medical records company that caters to pediatric clinics.

20.    Operating from Pennsylvania, it works with clinics around the country, providing software that collects and stores information on over 2.2 million patients.

21.    In collecting medical records and storing them, Connexin understands it has duties to safeguard patients' information.

22.    Connexin states that its "Privacy Policy governs the manner in which Office Practicum collects, uses, maintains and discloses information collected from users[.]" [1] Under that policy, Connexin explains it may collect "personally identifiable information" in a "variety of ways," such as from third parties.

23.    When collecting that information under the policy, Connexin guarantees it has measures to protect it: "We adopt appropriate data collection, storage and processing practices and security measures to protect against unauthorized access, alteration, disclosure or destruction of your personal information, username, password, transaction information and data stored on OP Services."

---

[1] Find Connexin's Privacy Policy and Terms & Conditions at https://www.officepracticum.com/privacy-policy (last visited Jan. 6, 2023).

24. Connexin's terms and conditions also confirm its duties to protect PII and PHI. Connexin states that its terms are a contract: "THESE TERMS OF Use ("TERMS") CONSTITUTE A CONTRACT BETWEEN YOU AND Office Practicum." And under that contract, Connexin assumes a responsibility to safeguard it:

> Subject to the express permissions of these Terms, You and Office Practicum will protect each other's Confidential Information from unauthorized use, access or disclosure in the same manner as each protects its own Confidential Information, but **with no less than reasonable care**. Except as otherwise expressly permitted pursuant to these Terms, each of us may use each other's Confidential Information solely to exercise our respective rights and perform our respective obligations under these Terms and shall disclose such Confidential Information solely to those of our respective employees, representatives and Subscribers who have a need to know such Confidential Information for such purposes and who are bound to maintain the confidentiality of, and not misuse, such Confidential Information.

25. But despite recognizing its duties to protect patients' PII and PHI, Connexin never implemented the security measures necessary to fulfill them, leaving patients' information an unguarded target for theft and misuse.

**B.    Connexin Fails to Safeguard Patient PHI and PII**

26. Connexin's security lapses arose from how it stores patient information offline.

27. Unlike typical data breaches that involve sophisticated hacks through internet connections, Connexin's data breach was an offline hack.

28. In August 2022, Connexin detected a "data anomaly" on its internal network.

29. The "anomaly" affected an offline system Connexin uses for "conversion and troubleshooting."

30. On information and belief, this "conversion and troubleshooting" system is a tool or process that can be used to convert data or files from one format to another, or to identify and fix problems with software or systems. On information and belief, Connexin keeps the system offline ostensibly to better protect the data it holds.

5

31.    But because Connexin failed to implement safeguards to protect the system from an offline hack, criminals could access the system and steal the records belonging to over 2.2 million patients.

32.    The stolen PII and PHI covered all aspects of patients' treatment histories, insurance information, and identifying information, including: "(1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ("SSNs"), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information, physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider)."

33.    Despite the wide-ranging impact of the breach, Connexin was unable to detect it before criminals could remove the files from its systems.

34.    After the breach, Connexin "immediately launched an investigation"—an investigation Connexin completed within a few weeks.

35.    Still, Connexin would not warn patients about the breach for another three months, all while criminals had their PII and PHI.

36.    As a result, patients had no reason to guard themselves against identity theft and fraud following the hack, including Ms. Council.

37.    From November through early December 2022, Ms. Council suffered repeated fraud and identity theft. Before Connexin announced the breach she had no idea what initiated the rampant fraud affecting her personal accounts.

38.     In December 2022, Connexin finally disclosed its breach to patients. In its notice, Connexin advised that patients review their accounts for fraud: "We encourage you to carefully review credit reports and statements sent from providers as well as your insurance company to ensure that all account activity is valid; any questionable charges should be promptly reported to the provider's billing office, or for insurance statements, to your insurance company."

39.     On information and belief, Connexin failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over patient PHI and PII. Connexin's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PHI and PII. Further, the Breach Notice makes clear that Connexin cannot, or will not, determine the full scope of the Data Breach, as it has been unable to determine exactly what information was stolen and when.

**C.      Plaintiff's Experience**

40.     Ms. Council is a data breach victim, receiving Connexin's data breach notice in December 2022.

41.     Ms. Council does not recall ever learning that her information was compromised in a data breach incident, other than the breach at issue in this case

42.     Ms. Council provided her PHI and PII to receive medical services and trusted that all providers facilitating those services, including Connexin, would use reasonable measures to protect it. Indeed, she viewed data protection as implicit in her agreement to seek medical services.

43.     Because Connexin failed in its duties, Ms. Council has suffered repeated fraud. In November 2022, her personal Google, Facebook, Amazon, and PayPal accounts were hacked. Through her Facebook, Amazon, and PayPal accounts, criminals repeatedly added credit cards she did not authorize to the accounts to buy products in her name. In fact, on December 1, 2022,

alone, criminals added five credit cards to her Amazon account and spent $608 on products without her authorization. In other words, criminals are repeatedly incurring obligations in her name without her authorization.

44.     As a result of the Data Breach and the recommendations of Connexin's breach notice, Ms. Council made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, and monitoring her credit information as suggested by Connexin.

45.     Ms. Council has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. In fact, she has devoted more than 10 hours to the breach already. Ms. Council fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach. Ms. Council has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

46.     Ms. Council is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PHI and PII being placed in the hands of unauthorized third parties. This injury was worsened by Connexin's delay in informing patients about the Data Breach.

47.     Ms. Council has a continuing interest in ensuring that her PHI and PII, which, upon information and belief, remains backed up in Connexin's possession, is protected and safeguarded from future breaches.

**D.     Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

48.     Plaintiff and members of the proposed Class have suffered injury from the misuse

of their PHI and PII that can be directly traced to Defendant.

49. As a result of Connexin's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

  a. The loss of the opportunity to control how their PHI and PII is used;

  b. The diminution in value of their PHI and PII;

  c. The compromise and continuing publication of their PHI and PII;

  d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

  e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

  f. Delay in receipt of tax refund monies;

  g. Unauthorized use of stolen PHI and PII; and

  h. The continued risk to their PHI and PII, which remains in the possession of defendant and is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the PHI and PII in their possession.

50. Stolen PHI and PII are one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PHI and PII can be worth up to $1,000.00 depending on the type of information obtained.

51. The value of Plaintiff and the proposed Class's PHI and PII on the black market is

considerable. Stolen PHI and PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

52.     It can take victims years to spot identity or PHI and PII theft, giving criminals plenty of time to use that information for cash.

53.     One such example of criminals using PHI and PII for profit is the development of "Fullz" packages.

54.     Cyber-criminals can cross-reference two sources of PHI and PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

55.     The development of "Fullz" packages means that stolen PHI and PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PHI and PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PHI and PII is being misused, and that such misuse is fairly traceable to the Data Breach.

56.     Defendant disclosed the PHI and PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up,

disclosed, and exposed the PHI and PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PHI and PII.

57.     Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PHI and PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**E.     Defendant failed to adhere to FTC guidelines.**

58.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PHI and PII.

59.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

    a.     protect the personal customer information that they keep;

    b.     properly dispose of personal information that is no longer needed;

    c.     encrypt information stored on computer networks;

    d.     understand their network's vulnerabilities; and

    e.     implement policies to correct security problems.

60.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

61.     The FTC recommends that companies not maintain information longer than is

needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

62.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PHI and PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**F.     Defendant Failed to Adhere to HIPAA**

64.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[2]

65.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI is

---

[2] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

properly maintained.[3]

66.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.     Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.     Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.     Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.     Failing to ensure compliance with HIPAA security standards by Defendant workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.     Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.     Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.     Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.     Failing to effectively train all staff members on the policies and

---

[3] *See* 45 C.F.R. § 164.306 (Security standards and General rules); 45 C.F.R. § 164.308 (Administrative safeguards); 45 C.F.R. § 164.310 (Physical safeguards); 45 C.F.R. § 164.312 (Technical safeguards).

procedures with respect to PHI as necessary and appropriate for staff members to carry out their

functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. §

164.308(a)(5); and

    i. Failing to design, implement, and enforce policies and procedures

establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance

with 45 C.F.R. § 164.530(c).

**CLASS ACTION ALLEGATIONS**

    67. Plaintiff sues on behalf of themself and the proposed Class ("Class"), defined as

follows:

> All individuals residing in the United States whose PII was
> compromised in the Data Breach disclosed by Connexin in
> December 2022.

Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in

which Defendant has a controlling interest, any Defendant officer or director, any successor or

assign, and any Judge who adjudicates this case, including their staff and immediate family.

    68. Plaintiff reserves the right to amend the class definition.

    69. This action satisfies the numerosity, commonality, typicality, and adequacy

requirements under Fed. R. Civ. P. 23.

    a. **Numerosity**. Plaintiff is representative of the proposed Class, consisting

of 2.2 million members, far too many to join in a single action;

    b. **Ascertainability**. Class members are readily identifiable from information

in Defendant's possession, custody, and control;

    c. **Typicality**. Plaintiff's claims are typical of Class member's claims as each

arises from the same Data Breach, the same alleged violations by Defendant, and the same

unreasonable manner of notifying individuals about the Data Breach.

d.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e.    **Commonality**. Plaintiff and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff and the Class's PHI and PII;

ii.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.    Whether Defendant was negligent in maintaining, protecting, and securing PHI and PII;

iv.    Whether Defendant breached contract promises to safeguard Plaintiff and the Class's PHI and PII;

v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.    Whether Defendant's Breach Notice was reasonable;

vii.    Whether the Data Breach caused Plaintiff and the Class injuries;

viii.    What the proper damages measure is; and

ix.    Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

70.     Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff reallege all previous paragraphs as if fully set forth below.

72.     Plaintiff and members of the Class entrusted their PHI and PII to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PHI and PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

73.     Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PHI and PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PHI and PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff and members of the Class's PHI and PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PHI and PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

74.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PHI and PII. Defendant also

16

owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PHI and PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

75.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff' and members of the Class's personal information and PHI and PII.

76.    The risk that unauthorized persons would attempt to gain access to the PHI and PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PHI and PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PHI and PII—whether by malware or otherwise.

77.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PHI and PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

78.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PHI and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the

harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact. As a direct

and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and

members of the Class have suffered or will suffer damages, including monetary damages,

increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

79.    Defendant's breach of its common-law duties to exercise reasonable care and its

failures and negligence actually and proximately caused Plaintiff and members of the Class

actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PHI

and PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of

their PHI and PII, and lost time and money incurred to mitigate and remediate the effects of the

Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact

and damages are ongoing, imminent, immediate, and which they continue to face.

### COUNT II
### Negligence Per Se Under the FTCA
### (On Behalf of Plaintiff and the Class)

80.    Plaintiff and members of the Class incorporate the above allegations as if fully set

forth herein.

81.    Plaintiff alleges this negligence per se theory as alternative to her other negligence

claims.

82.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and

adequate computer systems and data security practices to safeguard Plaintiff and members of the

Class's PII.

83.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by

businesses, such as Defendant, of failing to use reasonable measures to protect customer

information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive PII.

84.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its patient PHI and PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PHI and PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

85.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

86.     Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and the Class's PHI and PII.

87.     Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PHI and PII.

88.     Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

89.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

90.     The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

91.     Had Plaintiff and members of the Class known that Defendant did not adequately protect their PHI and PII, Plaintiff and members of the Class would not have entrusted Defendant with their PHI and PII.

92.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PHI and PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

**COUNT III**
**Negligence Per Se Under HIPAA**
**(On Behalf of Plaintiff and the Class)**

93.     Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

94.     Plaintiff alleges this negligence per se theory as alternative to her other negligence claims.

95.     Defendant is a covered entity under HIPAA and had a duty under its terms to

protect Plaintiff and the class information from cybercriminals.

96.     Defendant breached its duty under HIPAA through the following violations:

a.  Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.  Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  Failing to ensure compliance with HIPAA security standards by Defendant workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their

functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b)

and 45 C.F.R. § 164.308(a)(5); and

i.   Failing to design, implement, and enforce policies and procedures establishing

physical and administrative safeguards to reasonably safeguard PHI, in

compliance with 45 C.F.R. § 164.530(c).

97.    Defendant was negligent per se in failing to maintain Plaintiff and the class's

records under HIPAA.

98.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff

and members of the Class, Plaintiff and members of the Class would not have been injured.

99.    The injury and harm suffered by Plaintiff and members of the Class were the

reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should

have known that Defendant was failing to meet its duties and that its breach would cause

Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure

of their PII.

100.    Had Plaintiff and members of the Class known that Defendant did not adequately

protect their PHI and PII, Plaintiff and members of the Class would not have entrusted Defendant

with their PHI and PII.

101.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and

members of the Class have suffered harm, including loss of time and money resolving fraudulent

charges; loss of time and money obtaining protections against future identity theft; lost control

over the value of PHI and PII; unreimbursed losses relating to fraudulent charges; losses relating

to exceeding credit and debit card limits and balances; harm resulting from damaged credit

scores and information; and other harm resulting from the unauthorized use or threat of

unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

## COUNT IV
### Negligence Per Se Under the Notification Act
### (On Behalf of Plaintiff and the Class)

102.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

103.    Plaintiff alleges this negligence per se theory as alternative to her common law negligence and other negligence claims.

104.    Defendant is a business entity that maintains, stores, or manages computerized data that includes "personal information" as defined as 73 Pa. Stat. § 2302.

105.    Plaintiff's and members of the Class's PII and PHI includes "personal information" as defined by 73 Pa. Stat. § 2302.

106.    Defendant was aware of a breach of its computer system that it believed or reasonably should have believed had caused or would cause loss or injury to residents of Pennsylvania.

107.    Defendant had an obligation to disclose the Data Breach to Plaintiff and members of the Class in a timely fashion as mandated by 73 Pa. Stat. § 2303.

108.    Defendant's failure to disclose the Data Breach in a timely manner as required by 73 Pa. Stat. § 2303 constitutes negligence per se.

109.    As a direct and proximate cause of Defendant's negligence in failing to comply with 73 Pa. Stat. § 2303, Plaintiff and members of the Class sustained actual losses and damages as described herein.

**COUNT V**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

111.    Defendant offered to provide Plaintiff and members of the Class services through medical providers in exchange for their PHI and PII.

112.    In turn, and through internal policies, Defendant agreed it would not disclose the PHI and PII it collects to unauthorized persons. Defendant also promised to safeguard patient PHI and PII.

113.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PHI and PII.

114.    Plaintiff and the members of the Class would not have entrusted their PHI and PII to Defendant in the absence of such agreement.

115.    Defendant materially breached the contract(s) it entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and members of the Class by:

   a.   Failing to properly safeguard and protect Plaintiff and members of the Class's PHI and PII;

   b.   Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

   c.   Failing to ensure the confidentiality and integrity of electronic PII that Defendant

created, received, maintained, and transmitted.

116.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

117.    Plaintiff and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

118.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

119.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

120.    Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

121.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

122.    Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

## COUNT VI
## Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

123.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

124.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

125.    Plaintiff and members of the Class conferred a benefit upon Defendant in the form of disclosing their PHI and PII.

126.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class. Defendant also benefited from the receipt of Plaintiff and members of the Class's PHI and PII, as this was used to facilitate Defendant's medical services.

127.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of the benefits Plaintiff and the Class conferred because Defendant failed to adequately protect their PHI and PII. Plaintiff and the proposed Class would not have provided their PHI and PII had they known Defendant would not adequately protect their PHI and PII.

128.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## COUNT VII
## Breach of Confidence
### (On Behalf of Plaintiff and the Class)

129.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

130.    While collecting and storing Plaintiff and the Class's PHI and PII, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' personal data that Plaintiffs and Class Members provided to Defendant.

131.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by expectations that Plaintiff and Class Members' personal data would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

132.    Plaintiff and Class Members provided their respective personal data with the explicit and implicit understandings that it would be protected.

133.    Plaintiff and Class Members also provided their respective personal data with the explicit and implicit understanding that Defendant would take precautions to protect that personal data from unauthorized disclosure, such as following basic principles of information security practices.

134.    Defendant voluntarily received in confidence Plaintiff and Class Members' personal data with the understanding that the personal data would not be disclosed or disseminated to the public or any unauthorized third parties.

135.    Due to Defendant's failure to prevent, detect, and/or avoid the data breach from occurring by, *inter alia*, failing to follow best information security practices to secure Plaintiff and Class Members' personal data, Plaintiff and Class Members' personal data was disclosed and misappropriated to unauthorized third parties beyond Plaintiff and Class Members' confidence, and without their express permission.

136.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages.

137. But for Defendant's disclosure of Plaintiff and Class Members' personal data in violation of the parties' understanding of confidence, their personal data would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data breach was the direct and legal cause of the theft of Plaintiff and Class Members' personal data, as well as the resulting damages.

138. The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff and Class Members' personal data. Defendant knew its computer systems and technologies for accepting and securing Plaintiff and Class Members' personal data had numerous security vulnerabilities because Defendant failed to observe industry standard information security practices.

139. As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from identity theft; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports, and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

140. As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT VIII**
**Publicity Given to Private Life**
**(On Behalf of Plaintiff and the Class)**

141.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

142.    One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable person, is subject to liability to the other for invasion of their privacy.

143.    As a condition to receiving medical services, Plaintiff and the Class disclosed their PHI and PII, including medical information.

144.    Defendant collected and stored that information, accepting duties to safeguard it with reasonable means.

145.    Defendant failed to employee adequate and reasonable security measures to prevent public disclosure of Plaintiff and the Class's private information.

146.    Defendant failed to timely and reasonably notify Plaintiff and the Class about the data breach for a period of months, which made Plaintiffs and the Class vulnerable to identify theft.

147.    As a result of the disclosure of Plaintiff and the Class's private information, Plaintiff have suffered a de facto injury, which entitles them to general damages

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.      Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.      Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.      Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PHI and PII;

E.      Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATE:  January 10, 2023                    BY:  */s/ Patrick Howard*
                                                Patrick Howard (PA ID #88572)
                                                **SALTZ, MONGELUZZI, & BENDESKY, P.C**.
                                                120 Gibraltar Road, Suite 218
                                                Horsham, PA 19044
                                                Tel: (215) 496-8282
                                                Fax: (215) 754-4443
                                                phoward@smbb.com

Samuel J. Strauss*
Raina Borrelli*
**TURKE & STRAUSS, LLP**
613 Williamson Street #201
Madison, WI 53703
Tel: (608) 237-1775
Sam@turkestrauss.com
Raina@turkestrauss.com

*\* To be admitted Pro Hac Vice*

*Attorneys for Plaintiff*